IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RICARDO SAUNDERS,     *

   Plaintiff     *

     v.     *     Civil Action No. DKC-18-569

BALTIMORE COUNTY DETENTION     *
  CENTER MEDICAL DEPARTMENT, *et al.*,
    *
   Defendants
                                                ***

## MEMORANDUM OPINION

Plaintiff Ricardo Saunders, formerly an inmate at Baltimore County Detention Center, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 alleging that Defendants were deliberately indifferent to his medical needs. Defendants Amaefule and Figueroa filed a motion to dismiss or, in the alternative, motion for summary judgment. Although Mr. Saunders was advised of his right to respond to the motion, he has not done so. Having reviewed the submitted materials, the court finds that no hearing is necessary. *See* D. Md. Local Rule 105.6. For the reasons set forth below, Defendants Amaefule and Figueroa's dispositive motion, construed as a motion for summary judgment, shall be granted, and the remaining Defendants shall be dismissed.

## BACKGROUND

**I.    Plaintiff's Allegations**

Mr. Saunders alleges that he suffers from sleep apnea, requiring him to use a "CPAP Machine" when sleeping. ECF No. 1 at 3. On January 23, 2018, while Mr. Saunders was confined to the Baltimore County Detention Center (BCDC), he "was sent to the medical department due to vomiting (during a flu outbreak)." *Id.* at 2. Although the medical tests that Mr. Saunders was

given indicated that he did not have the flu, Defendant Dr. Barnes ordered him to be quarantined for 24 hours. *Id.* at 2-3.

Based on the quarantine instruction, Mr. Saunders "was placed in a cell without [his] equipment (CPAP Machine)[.] This cell had nothing in it, but a[] toilet and sink. With constant air conditioning blowing from a[] vent[, Mr. Saunders] began to start feeling an[xi]ety, depression, hypertension, and sleep deprivation." *Id.* at 3. Mr. Saunders alleges that he notified correctional staff of his need for his CPAP machine. Specifically, Mr. Saunders states that he informed Defendant Sgt. Amaefule, who simply responded by saying "'I know, I know' . . . [but] never did help [Mr. Saunders], and went home after his shift was over." *Id.* Thereafter, Mr. Saunders informed Defendant Sgt. Figueroa that he needed his CPAP machine; "Figueroa said 'ok,' and then continued on his shift" without getting Mr. Saunders' CPAP machine for him. *Id.* Mr. Saunders was released from quarantine on January 24, 2018, after spending 16 hours in the cell without his CPAP machine. *Id.* Aside from the above-noted mental stress, sleep deprivation, and hypertension, Mr. Saunders does not allege that he suffered any specific ill-effects from being without his CPAP machine, though he conclusorily alleges that he "could have died in that cell." *Id.* at 3

## II. Defendants Amaefule and Figueroa's motion

Defendants Amaefule and Figueroa filed a motion to dismiss or, in the alternative, motion for summary judgment supported with affidavits and other materials. *See* ECF Nos. 26, 26-7, 26-9. In relevant part, Amaefule avers that he does "not recall hav[ing] any conversation regarding CPAP equipment with Mr. Saunders" and that "Mr. Saunders would not have been able to use his CPAP equipment in Zone 1 holding cells because the cells do not have electric outlets." ECF No. 26-7. Further, Amaefule references and has attached a copy of an email he sent roughly a month

after the incident in response to an inquiry "about Mr. Saunders complaint that he was not allowed to use his CPAP machine,"; Amaefule responded that he "did not transport Mr. Saunders to Zone 1 housing and did not know about the CPAP machine." *Id.*; *see also* ECF No. 26-3.

Defendant Figueroa avers that

> 11. Between approximately 11:30 PM and 12:30 PM [sic] on January 23-24, 2018, I had a brief 20-30 second conversation with inmate Ricardo Saunders (Mr. Saunders) in which he inquired about his Continuous Positive Airway Pressure (CPAP) device. He informed me that his CPAP device was not brought with him to the isolation cell and that he needed it. He asked if I would look into getting it brought to his isolation cell. I told him I would;
>
> 12. I did not find any information in the Jail Management System computer and did not find any paper work for the CPAP equipment. I called medical to see if a CPAP was authorized for Mr. Saunders and if so where was it presently located. Medical staff said they would call me back;
>
> 13. Medical staff subsequently called me and advised that Mr. Saunders was authorized to have the CPAP equipment but that they did not know where it was presently located;
>
> 14. I checked on Mr. Saunders during the night and each time I checked on him I observed that he was breathing without difficulty and asleep;
>
> 15. I saw Mr. Saunders at approximately 4:15-4:30 AM at breakfast and told him that I had checked on the CPAP equipment but had not been able to locate it;
>
> 16. During the time I spoke to Mr. Saunders, he was calm and respectful. He did not appear to be distressed or anxious;
>
> 17. I had no further interaction or conversations with Mr. Saunders regarding his CPAP equipment.

ECF No. 26-7 at 2-3.

In addition to Amaefule and Figueroa's affidavits, Defendants have also submitted an affidavit from Yolanda Rawlerson, the Medical Nurse Liaison at BCDC, in which she noted:

> 11. Mr. Saunders' incarceration at BCDC began on July 4, 2017. At the time he [sic] of his admission, Mr. Saunders reported to the medical personnel, that he suffered from sleep apnea and required CPAP equipment;

3

12. Medical personnel informed Mr. Saunders on July 4, 2017, that his family would have to bring his CPAP equipment to BCDC. On July 25, 2017, Mr. Saunders family brought his CPAP equipment to BCDC;

13. From July 4, 2017, to July 25,2017, a total of 21 days, Mr. Saunders was housed on the Medical tier without CPAP equipment. During that time he had no medical complications[.]

ECF No. 26-8 at 3.

Though informed of his right to do so, ECF No. 27, Mr. Saunders did not file anything in response to Defendants' motion.

## STANDARD OF REVIEW

Defendants Amaefule and Figueroa's dispositive motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d

4

253, 261 (4th Cir. 1998). Because Defendants have filed and relied on declarations and exhibits attached to their dispositive motion, the motion shall be treated as one for summary judgment.

Summary judgment is governed by Rule 56(a), which provides in relevant part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In analyzing a summary judgment motion, the court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). Because Mr. Saunders is proceeding pro se, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, the court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted).

## DISCUSSION

Mr. Saunders does not specify whether he was a pretrial detainee or convicted prisoner at the time of the incident. However, Defendants have provided a copy of the docket sheet in Mr. Saunders' state criminal case indicating that he was a convicted prisoner at the time. ECF No. 26-

5

6. Accordingly, Mr. Saunders' claim of deliberate indifference to his medical needs is analyzed under the Eighth Amendment. *See Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001).

Deliberate indifference to a serious medical need requires proof that, objectively, the plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241; *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40 (1994); *see also Anderson v. Kingsley*, 877 F.3d 539, 544 (4th Cir. 2017). Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference because

'prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) ("[A] prison official's response to a known threat to inmate safety must be reasonable."). Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001). While "a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need." *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013).

"Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (describing the applicable standard as an "exacting" one).

**A.     Defendant Baltimore County Detention Center Medical Department**

Section § 1983 states that

"Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured . . ."

7

42 U.S.C. § 1983 (emphasis supplied). Municipalities are "included among those persons to whom § 1983 applies." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978).[1] However, a municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. "Section 1983 plaintiffs seeking to impose liability on a municipality must, therefore, adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). Here, Mr. Saunders does not claim his alleged deprivation was connected to any sort of official policy or custom (as opposed to an isolated incident caused by individual employees). Therefore, Baltimore County Detention Center Medical Department (or, technically, "Baltimore County, Maryland) must be dismissed.

**B.     Defendant Barnes**

The court was unable to obtain service on Defendant Barnes. However, the court finds further efforts unnecessary in view of the fact that Mr. Saunders has failed to state a claim against Dr. Barnes. Mr. Saunders alleges that "Dr. Barnes ordered me to be quarantine[d] for 24 hours knowing my health issue of serve [sic] sleep apnea[,] which requires the use of my cpap machine," and that he was put in a cell without the CPAP machine or an electrical outlet necessary to connect the machine to a power source. ECF No. 1 at 3. However, Mr. Saunders fails to allege that Dr. Barnes had any involvement with his specific cell placement while being quarantined. Likewise,

---

[1] Technically, "Baltimore County Detention Center Medical Department" is not a legal entity that can be sued. The Baltimore County Detention Center (and, by extension, its Medical Department) is controlled by the Baltimore County Department of Corrections, an administrative agency of Baltimore County. Baltimore County Ord. §§ 3-2-301 to 3-2-303. Under the County Charter, "[t]he corporate name shall be 'Baltimore County, Maryland,' and it shall thus be designated in all actions and proceedings touching its rights, powers, properties, liabilities and duties." Baltimore County, Md. Charter § 103. However, even assuming that Mr. Saunders had named the correct legal entity, his claim would fail.

he fails to allege that Dr. Barnes had knowledge that his CPAP machine was not taken to his quarantine cell or that the cell lacked a power source. In other words, although Mr. Saunders alleges that Dr. Barnes knew of his sleep apnea and of his customary use of a CPAP machine, there are no facts alleged in the complaint to support a conclusion that Dr. Barnes knew Mr. Saunders would be deprived of his CPAP machine based on the decision to quarantine him. Although Mr. Saunders alleges he informed particular individuals that he had been deprived of his CPAP machine and needed it, Dr. Barnes is not one of the identified individuals. Therefore, Mr. Saunders fails to state a claim against Dr. Barnes because he does not allege that Dr. Barnes had the requisite actual knowledge to support a prima facie deliberate indifference claim.

**C.     Defendants Amaefule and Figueroa**

Regarding the objective prong of a deliberate indifference claim, it is unlikely that a sleep apnea sufferer being deprived of a CPAP machine for a single night rises to the level of a serious medical condition. Mr. Saunders does not detail the severity of his particular condition; however, the health complications from sleep apnea stem from the consequences of getting inadequate sleep over a long period of time, not just a single night of poor sleep. *See* National Heart, Lung, and Blood Institute, National Institutes of Health, *Sleep Apnea*, https://www.nhlbi.nih.gov/health-topics/sleep-apnea (last visited June 20, 2019); Mayo Clinic, *Sleep Apnea*, https://www.mayoclinic.org/diseases-conditions/sleep-apnea/symptoms-causes/syc-20377631 (last visited June 20, 2019). This is particularly true given the undisputed evidence that upon his arrival at the jail, Mr. Saunders went without his CPAP machine for 21 consecutive nights without medical complications. ECF No. 26-8 at 3.

As to the subjective prong, there is no suggestion that either Amaefule or Figueroa appreciated the possible consequences of Mr. Saunders not receiving his CPAP machine. Mr.

9

Saunders merely alleges that he told these two Defendants that he needed his CPAP machine; he does not allege that he reported his symptoms of "an[xi]ety, depression, hypertension, and sleep deprivation" he experienced; nor does he claim he told them of his belief that the deprivation of the CPAP machine "could have cost me my life;" nor is there any evidence that these Defendants had any basis to believe that the lack of a CPAP machine for a single night would cause any health consequences more severe than a disruptive night's sleep. ECF No. 1 at 3. Moreover, as to Figueroa in particular, even he had been aware of the potential for more severe consequences, his undisputed affidavit indicates that he reasonably responded to the risk by trying to find the CPAP machine and, when unable to locate it, by checking on Mr. Saunders throughout the night to ensure he was not in distress. ECF No. 26-7 at 2-3. Figueroa's actions do not evidence a callous disregard for Mr. Saunders' well-being. Accordingly, Mr. Saunders' claim that Amaefule and Figueroa were deliberately indifferent must fail.

## CONCLUSION

For the foregoing reasons, Defendants Baltimore County Detention Center Medical Department and Barnes are dismissed, and Defendants Amaefule and Figueroa's dispositive motion, construed as a motion for summary judgment is granted. A separate Order follows.

June 24, 2019                                             /s/
                                                          DEBORAH K. CHASANOW
                                                          United States District Judge